IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KEVIN DeANGELIS, ET AL. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ENCOMPASS HOME AND AUTO | : | |
| INSURANCE COMPANY, ET AL. | : | NO. 21-2577 |

## MEMORANDUM

Padova, J.                                                                                                           May 30, 2023

      Plaintiffs Kevin and Danielle DeAngelis initiated this action against their insurer, Encompass Home and Auto Insurance Company ("Encompass"), and Victor A. Hoffman, Jr., an appraiser, after their home was damaged in a windstorm. Plaintiff asserts a claim against Hoffman, individually and trading as Catastrophe Claim Works Inc., for tortious interference with contract. Hoffman has filed a Motion for Summary Judgment, seeking judgment in his favor on the claim against him. For the following reasons, we grant Hoffman's Motion.

**I.    BACKGROUND**

      The undisputed facts in the summary judgment record are as follows. Plaintiffs Kevin and Danielle DeAngelis own property at 808 Tremont Drive in Downingtown, Pennsylvania (the "Property"). (Concise Stmt. of Additional Undisputed Material Facts ("Stip. Facts"), Docket No. 55-5, ¶ 1.)[1] At all pertinent times, a residential insurance policy issued by Defendant Encompass (the "Policy") covered the Property. (Id. ¶ 3.) On April 30, 2020, the Property was damaged during a windstorm. (Id. ¶ 2.) Plaintiffs filed a claim with Encompass for the Property losses

---

[1] Plaintiffs have not stipulated to all of the facts included in the Concise Statement of Additional Undisputed Material Facts. (See Docket No. 59 at 2-12 of 42.) Accordingly, in recounting the undisputed facts, we cite only to those aspects of the Concise Statement of Additional Undisputed Material Facts to which Plaintiffs have agreed.

sustained as a result of the storm, and they also hired a public adjuster, Scott Wolfertz from Metro Public Adjustment, Inc. ("Metro"), to prepare an estimate of those losses.  (Id. ¶¶ 4-7.)  A second adjuster, Nadine Land, prepared an estimate of Plaintiffs' losses for Encompass.  (Id. ¶ 7.)

On June 5, 2020, Encompass sent a letter to Plaintiffs stating that the Policy provided coverage for some of their claimed losses, but that other areas of damage were excluded from coverage.  (Id. ¶ 9 and Ex. F.)  Specifically, Encompass wrote that the wind damage to Plaintiffs' roof was covered under the Policy, but that part of Plaintiffs' roof was damaged by "overdriven nails on [Plaintiffs'] roof shingles due to improper workmanship" and that this damage did not constitute a covered loss.  (Id. ¶ 10 and Ex. F.)

On August 3, 2020, Plaintiffs invoked the Appraisal Provision in the Policy and demanded an appraisal.  (Id. ¶ 12.)  The Appraisal Provision states, in pertinent part, as follows:

> **Appraisal.**
>
> If **we** and **you** do not agree on the amount of loss, either may demand an appraisal of the loss.  In this event each party will select a competent and disinterested appraiser . . . .  The two appraisers will select an umpire. . . . The appraisers will state separately the amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will be binding.

(Id. ¶ 11 and Ex. G at 39 of 39.)  Encompass agreed to participate in the appraisal process and assigned adjuster Darren Morgan to handle the appraisal portion of Plaintiff's claim.  (Id. ¶¶ 15-16.)  Morgan advised Plaintiffs by letter that "issues of **coverage cannot** be determined through the appraisal process."  (Id. ¶ 17 and Ex. I at 3 of 3.)  Plaintiffs selected Chris Powers of Power Point Appraisals as their appraiser.  (Id. ¶ 14.)  Encompass named Hoffman as its appraiser.  (Id. ¶ 19.)

Hoffman contacted Powers on September 26, 2020, provided him a Proposed Umpire Letter for review, and requested possible inspection dates and times.  (Id. ¶ 20 and Ex. L at 1-2.)

Powers agreed to use Chris Cherewich as the umpire. (Id. ¶ 22, Ex. L at 1, and Ex. K (Powers Dep. Tr.) at 64.) Powers and Hoffman performed an inspection on November 4, 2020. (Id. ¶ 25, and Ex. K at 178-79.) During the inspection, Powers told Hoffman that his position was that the entire roof needed to be replaced, but Hoffman disagreed. (Id. ¶¶ 26-27.) Also during the inspection, Powers made clear that Plaintiffs were claiming siding damage as well, and Hoffman told Powers that he would need to alert Encompass that Plaintiffs were making that claim because he had not seen any reference to siding damage in the paperwork that he had received. (Id. ¶ 28 and Ex. M (Hoffman Dep. Tr.) at 80.)

On November 11, 2020, Encompass "suspended the Appraisal" to address the siding issue. (Id. ¶ 29.) According to Morgan, Hoffman did not play any role in the decision to pause the appraisal, except insofar as he advised Encompass that there was an issue regarding the siding. (Id. Ex. J (Morgan Dep. Tr.) at 78-79.) Following the pause, Encompass decided to cover the cost of replacing all of the siding. (Id. ¶ 31.)

Consistent with that decision, on January 4, 2021, Morgan wrote to Wolfertz, stating that Hoffman had been "instructed to move forward with the appraisal" and that the updated estimate should include a "full wrap of [the] siding on the house." (Id. ¶ 32.) In an email chain that same day, Powers wrote that because Encompass was now paying "for the entire house of siding with damage to only one elevant," it was "obvious that [Encompass] owe[s] for like kind and quality." (Id. ¶ 33.) He therefore stated that the appraisers "should get an ITEL sample for the roof as the roof should be handled the same as the siding." (Id.) Hoffman disagreed, stating that Encompass had issued a partial denial letter for the roof, so that, in his opinion, that aspect of the loss was not appraisable. (Id. ¶ 34.) Hoffman further stated that his "hands were tied" because of Encompass's partial denial and because "there were already several prior roof patches [on

3

Plaintiffs' roof,] which already don't match." (Id. ¶ 36 (quotation omitted).) Morgan likewise testified at his deposition that Hoffman had been tasked with determining how much it would cost to replace "the handful of wind-damaged shingles" and that Hoffman "could not do anything with the rest of the roof" because of the coverage denial. (Id. ¶¶ 48-49 and Ex. J at 64-65.) Based on his understanding of the scope of his responsibilities, Hoffman wrote to Powers in the January 4 email chain that if Powers believed that the whole roof had to be replaced, they would need to proceed to an umpire. (Id. ¶ 37.) Powers then asked Hoffman for his loss estimate, and Hoffman provided his estimate the next day. (Id. ¶¶ 39-40.) Powers did not prepare his own estimate of the loss but, instead, relied on the estimate prepared by Wolfertz. (Id. ¶¶ 41-42.)

After reviewing Hoffman's estimate, Powers understood that he and Hoffman still disagreed regarding whether the entire roof should be replaced. (Id. ¶ 43.) Powers admitted at his deposition that this disagreement regarding the scope of the repairs could have been addressed by the umpire. (Id. ¶ 44.) On January 18, 2021, Powers told Hoffman that he was waiting to hear from Plaintiffs as to whether they would like to proceed to an umpire. (Id. ¶ 45.)

On January 28, 2021, Morgan sent an email to Metro, in which he stated that Powers and Hoffman had been unable to reach an agreement on the amount of loss, but that Powers had refused to move forward with the umpire until Plaintiffs approved. (Id. ¶ 51.) He sent an almost identical follow-up email on February 12, 2021. (Id. ¶ 52.) On February 24, 2023, Hoffman told Powers that he had spoken with Morgan, who stated that if Hoffman and Powers could not agree upon a loss amount within a week and Powers continued to refuse to go to the umpire, Morgan wanted to be notified and he would close the appraisal for lack of cooperation. (Pls.' Ex. B at 3.) Powers wrote back to Hoffman, copying Wolfertz and stating that he "d[id] not care what the carrier stated or deadlines that they are trying to enforce" because "Appraisal removes the carrier from the

4

handling of the claim." (Id. at 2.) Powers also included a paragraph in the email, specifically addressed to Wolfertz, in which he stated that he felt that Hoffman had "lost his ability to act in an unbiassed fashion on the handling of th[e] claim," that Hoffman "seem[ed] to want to get the carriers [sic] opinion on all aspects and handling of the claim" and "r[an] to the carrier to make decisions for him." (Id.) He also complained that Hoffman "ha[d] been pushing to go to umpire before we even had a disagreement on the amount of loss." (Id.) Powers stated that he did not "see the insured receiving a fair and unbiased appraisal due to Mr. Hoffman's actions," "recommend[ed] speaking to an attorney to get some legal advice on how to move the claim further," and asked Wolfertz to "let [him] know if [he] would like to proceed with the appraisal or remove and go the legal route." (Id.)

Hoffman responded to Powers' email the following day, taking issue with what he perceived as "falsehoods and derogatory information" about him and reiterating that they needed to send the claim to the umpire if they could not agree on the loss amount. (Id. at 1.) In that regard, Hoffman specifically noted that they did not yet have an agreement and "were never close to agreeing since [Powers] stated [that his] estimate was the Public Adjuster's $70k estimate." (Id.)

On February 26, 2021, Morgan wrote a third and final email to [Metro], reiterating that Hoffman and Powers had been unable to agree on the amount of the loss, and that Powers refused to move forward with the umpire until Plaintiffs approved. (Stip. Facts. ¶ 54 and Ex. T.) He recounted that Encompass had since told Powers that "he ha[d] 1 week to accept [Encompass's] settlement offer or follow thru with the appraisal process and get the umpire involved." (Id. Ex. T and ¶ 55.) Morgan added that if Powers did neither, Encompass would "close the claim and send out a denial letter on the appraisal, as the rules of the appraisal are not being adhered to."

(Id. ¶ 56 and Ex. T.)

On March 4, 2021, Wolfertz wrote to Morgan, stating that "the issue [between the appraisers] has been repairability," that "the appraisal apparatus [has] failed for various reasons," and that "it would benefit all parties" if they could "come up with an agreeable supplement." (Id. ¶ 57 and Ex. U.) On April 6, 2021, Metro's appraisal department advised Encompass that Plaintiffs were withdrawing their appraisal demand. (Id. ¶ 59 and Ex. V.)

Three weeks later, on April 27, 2021, Plaintiffs filed a Complaint against Encompass and Hoffman. Count V of the Complaint asserts a claim for tortious interference with contract against Hoffman, alleging that Hoffman interfered with Plaintiffs' contract with Encompass, which gave Plaintiffs a contractual right to an independent appraisal, because he did not maintain impartiality, accepted direction from Encompass, and unnecessarily limited the scope of the appraisal. Hoffman has moved for summary judgment in his favor on this claim.

## II.    LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id. In ruling on a summary judgment motion, we consider "the facts and draw all reasonable inferences in the light most favorable to . . . the party who oppose[s] summary judgment." Lamont v. New Jersey, 637 F.3d 177, 179 n.1 (3d Cir. 2011) (citing Scott v. Harris, 550 U.S. 372, 378 (2007)). If a reasonable fact finder could find in the nonmovant's favor, summary judgment may not be granted. Congregation Kol Ami v. Abington Twp., 309 F.3d 120, 130 (3d Cir. 2002)

(citation omitted).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court" that "there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response "must support the assertion [that a fact is genuinely disputed] by: (A) citing to particular parts of materials in the record . . . ; or (B) showing that the materials [that the moving party has cited] do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the nonmoving party fails to respond with a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### III. DISCUSSION

Hoffman argues in his Motion for Summary Judgment that there is no evidence in the record to support essential elements of Plaintiffs' claim.[2] The Pennsylvania Supreme Court has adopted section 766 of the Restatement (Second) of Torts, which governs the tort of intentional interference with existing contractual relationships.[3] Walnut St. Assocs., Inc. v. Brokerage

---

[2] Hoffman also argues that, as an appraiser, he is immune from suit. However, in support of this argument, he primarily relies on non-binding Connecticut caselaw and, in any event, we need not reach this argument because we grant judgment in his favor on other grounds.

[3] There is no dispute that Pennsylvania law applies to this case.

Concepts, Inc., 982 A.2d 94, 97 (Pa. Super. Ct. 2009) (citing Adler, Barish, Daniels, Levin & Creskoff v. Epstein, 393 A.2d 1175 (Pa. 1978)); see also Restatement (Second) of Torts § 766 (1979). To establish liability on this cause of action, a plaintiff must prove (1) "the existence of a contractual . . . relationship between the plaintiff and a third party;" (2) "purposeful action by the defendant, specifically intended to harm an existing relationship"; (3) "the absence of privilege or justification on the part of the defendant;" and (4) "legal damage to the plaintiff as a result of the defendant's conduct." Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 212 (3d Cir. 2009) (citing Brokerage Concepts, Inc. v. U.S. Healthcare, Inc., 140 F.3d 494, 530 (3d Cir. 1998)) (applying Pennsylvania law); see also Crivelli v. Gen. Motors Corp., 215 F.3d 386, 394 (3d Cir. 2000) (quoting Strickland v. Univ. of Scranton, 700 A.2d 979, 985 (Pa. Super. Ct. 1997)). Hoffman specifically argues that Plaintiffs cannot establish the second or third elements of this claim.

With respect to the second element, the United States Court of Appeals for the Third Circuit has stated that "a defendant's conduct is the sort that is intended to harm an existing contractual relation . . . only when the defendant induces or otherwise causes a third party not to perform the contract." Charbonneau v. Chartis Prop. Cas. Co., 680 F. App'x 94, 99 (3d Cir. 2017) (citation omitted). In this case, the Complaint alleges that Encompass breached the insurance contract by failing to pay Plaintiffs all of the Policy benefits to which they were entitled. (Compl. ¶¶ 17-19.) Hoffman therefore understands Plaintiffs to be asserting that he induced Encompass to deny Plaintiffs benefits for replacement of the roof. Based on this understanding, he argues that Plaintiffs have not proven, and cannot prove, the second element of their claim because the undisputed evidence establishes that Encompass decided not to reimburse Plaintiffs for replacement of the entire roof before it hired Hoffman as its representative in the appraisal process.

8

In response, Plaintiffs maintain that "[t]he basis of [their] claim against Mr. Hoffman is not regarding Encompass' partial denial regarding the roof." (Pls.' Mem. in Supp. of Resp. in Opp. to Def.'s Mot. for Summ. J. ("Pls.' Mem."), at 18 of 42.) Rather, they argue, they are claiming that Hoffman intentionally interfered with Plaintiffs' contract with Encompass by subverting the contractual appraisal process insofar as he "continuously tried to prematurely and unilaterally invoke the umpire," refused to be impartial, "improper[ly] reli[ed] on Encompass in his decision-making during the appraisal," threatened Powers, and ultimately "forced [Plaintiffs] to withdraw from the biased appraisal." (Id. at 18-19 of 42.) In fact, the heading of this argument in their brief is: "There are Genuine Issues of Material Fact as to Whether Mr. Hoffman Induced Plaintiff[s] to Withdraw from the Appraisal." (Id. at 18 of 42.) Thus, Plaintiffs' theory of liability is apparently that Hoffman engaged in conduct that affected their contractual performance, not that Hoffman induced Encompass to breach the Policy. Framed in this manner, the claim does not satisfy the second element of a tortious interference with contract claim under Pennsylvania law and section 766 of the Restatement (Second) of Torts, which, as stated above, requires proof that that the defendant caused a third party not to perform a contract. See Safa v. City of Philadelphia, Civ. A. No. 13-5007, 2014 WL 2011487, at *6 (E.D. Pa. May 16, 2014) (explaining that where "Plaintiffs' allegations . . . involve Defendants['] frustration of Plaintiffs['] ability to meet their contractual obligations," section 766 "has no applicability" (citing Windsor Sec., Inc. v. Hartford Life Ins. Co., 986 F.2d 655, 660 (3d Cir. 1993))).

Under these circumstances, as best as we understand it, Plaintiffs' cause of action for tortious interference appears to be an attempt to assert a claim under section 766A of the Restatement (Second) of Torts, which "addresses disruptions caused by an act directed at the plaintiff: the defendant prevents the plaintiff's own performance, or makes performance more

9

expensive or burdensome." KDH Elec. Sys., Inc. v. Curtis Tech LTD, 826 F. Supp. 2d 782, 804 (E.D. Pa. 2011) (emphasis omitted) (citing Windsor, 986 F.2d at 660); see also Restatement (Second) of Torts § 766A (1979).

Claims arising under section 766 and 766A "focus on different targets of interfering conduct," with section 766 supporting a cause of action arising from conduct that interferes with a third party's contractual performance, and section 766A addressing a cause of action arising from conduct that interferes with the plaintiff's own performance. KDH Elec. Sys., 826 F. Supp. 2d at 804 (citing Windsor, 986 F.2d at 660); see also Am. Osteopathic Ass'n v. Am. Bd. of Internal Med., 555 F. Supp. 3d 142, 149 n.3 (E.D. Pa. 2021) (citing Gemini Physical Therapy & Rehab. v. State Farm Mut. Auto. Ins. Co., 40 F.3d 63, 66 (3d Cir. 1994)). Because Plaintiffs have now defined their claim as being that Hoffman interfered with their own contractual performance, their claim must be characterized as one under Section 766A. Pennsylvania, however, has not adopted section 766A of the Restatement. KDH Elec. Sys., 826 F. Supp. 2d at 804. Moreover, the Third Circuit has predicted that the Pennsylvania Supreme Court would not adopt section 766A. Am. Osteopathic Ass'n, 555 F. Supp. 3d at 149 n.3 (citing Windsor, 986 F.2d at 659-63, and Gemini, 40 F.3d at 66).

In sum, given that Pennsylvania law does not recognize an interference claim grounded on section 766A, and Plaintiffs have failed to argue, much less point to any evidence, that Encompass breached the Policy as a result of interference by Hoffman, as is necessary to support a claim under section 766, we conclude that judgment must be entered in Hoffman's favor on Plaintiffs' contractual interference claim against him.

## IV. CONCLUSION

For the foregoing reasons, we grant Hoffman's Motion for Summary Judgment and enter judgment in Hoffman's favor. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.